UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA     : | |
| v.     : | Cr. No. 24-16 (TNM) |
| ANGEL VILLANUEVA     : | |

**<u>DEFENDANT'S MEMORANDUM IN AID OF SENTENCING</u>**

    Mr. Villanueva comes before this Court for plea and sentencing, prepared to plead guilty to parading, demonstrating or picketing and disorderly conduct in the United States Capital on January 6, 2021. He agreed to plead guilty before charges were brought and without getting any discovery in the case.[1] He was first approached by officers on July 6, 2021. He then contacted the government through his counsel and offered to meet with them within days. He then met with the government in the next week, in July 2021. At that time, he fully acknowledged the wrongfulness of his actions, was honest and remorseful and agreed to cooperate with their investigation. He subsequently provided the photos he had taken of the day and responded to several inquiries for more information. He met with them again in October at their request. And followed up with them by email, repeatedly providing additional information as requested. He was not charged for nearly 3 full years.

    Mr. Villanueva did not come with the intent to engage in violence, did not come prepared for violence, and did not participate in any violent acts, although he acknowledges that he

---

[1] Undersigned counsel did not represent Mr. Villanueva in the preliminary phases of this case. He had already agreed to the plea when undersigned counsel was asked to take over the case because of his inability to pay the expenses of having his lawyer appear in person in the District of Columbia. Unfortunately, because he agreed to the plea with no discovery produced, counsel's knowledge of his activities that day is limited. However, counsel has verified his cooperation with the investigation by reviewing prior counsel's emails with the agents and notes of the meetings with the agents.

foolishly became involved in a confrontation with other rioters who were engaging in an altercation with officers on the Upper West Terrace. He deeply regrets his actions. Moreover, he fully acknowledges that he was wrong to go into the Capitol and he regrets doing so. He recognizes just being there contributed to the damage caused that day and is particularly upset with himself for not immediately leaving when he saw the violence begin. As he freely notes, it was incredibly stupid. At his first meeting with the government on July 20, 2021, he told them when he returned to the hotel that night and saw the news he "felt sick" and asked himself "what did you just do." He felt disillusioned and foolish. He described feeling depressed and having a hard time talking to his wife and children about his behavior. He said he felt like a pawn or a puppet. When asked why he went through the window, he honestly explained that because of the rush of people it seemed like the path of least resistance. He acknowledged immediately that he knew he couldn't be where he was. The government asked him to provide additional information through his counsel after the conclusion of the interview, calling it "homework" and he did so readily and promptly.

As the letters submitted on his behalf demonstrate, this was very out of character for him and does not represent who he is as a person and more importantly who he is today. He would never engage in similar conduct. (See Exh. 3-5)

Mr. Villanueva has no adult criminal history, although he has acknowledged a past that is being filed under seal as Exhibit 1 in light of the references to sealed matters. That past has formed who he is today and the righteous path he has been on his entire adult life, but for his unfortunate involvement in the actions of January 6. He has also expressed his remorse, both in his meetings with law enforcement back in 2021, and consistently. (See Exh. 2). Mr. Villanueva is a family man with strong ties to his community and an abiding belief in God. He is the sole

financial support for his family and is very active in community and church activities, as is evidenced in the letters of support he has received.

Congress requires federal courts to impose the *least restrictive sentence necessary* to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a). Those factors include (a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a). In this case, a term of probation would meet all of the pertinent purposes of sentencing and would be appropriate given Mr. Villanueva's history and characteristics, including his significant family obligations, his contrition, his early and complete acceptance of responsibility, his demonstrated abandonment of criminal activity in the three years that have passed since the January 6 events, and his minimal role in the offense.

Notably, Mr. Villanueva did not engage in any violence or destruction of property, although he acknowledges the troubling behavior he briefly engaged in on the West Terrace.

The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation. In this case, there is no need for incapacitation, specific deterrence or rehabilitation. Mr. Villanueva's likelihood of recidivism is very low. He has accepted responsibility for his actions and has engaged in no similar behavior in the three years that have passed. In July 2001, very early on in the investigation of January 6, he met with the

FBI before any charges were brought, fully confessed his actions, and expressed true contrition. This was nearly three years before any charges were brought. He has not expressed any belief that the actions he took that day were justified, were a legitimate protest or expression of first amendment rights. His contrition is genuine. Moreover, his prior good behavior and good behavior in the intervening three years suggests he will have no difficulty on supervision. Thus, the purposes of sentencing that seem most at play are general deterrence and punishment.

General deterrence has been served in these cases by the collateral consequences that have damaged the lives and reputations of misdemeanants with the same charge in full view of the world. The rise of social media has made available the intimate details of every January 6 defendants' case with the touch of a button. The world is watching and has observed even the least culpable defendants be arrested, charged, and sentenced in public. There is no doubt that general deterrence has been served for those who would be deterred. Moreover, the public will be adequately deterred by the sentences meted out against those who perpetrated the violence and mayhem at the Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for the others involved.  Those who would not be deterred by these consequences are likely not capable of being deterred.  A period of probation does constitute punishment as one's liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on one's personal freedoms.

Mr. Villanueva did not destroy property, steal property, commit violent acts, or encourage others to do so.  He did not engage in pre-planning or coordination activities.  While it is not appropriate to punish an individual for asserting their right to go to trial and to have the government held to its burden of proof, there is a societal benefit when people who have done wrong acknowledge that wrongdoing in a public way as Mr. Villanueva has done.  This has a

deterrent effect on future wrongdoing and has a positive effect on others taking responsibility for their actions. It is also important to note that after his arrest in this case, Mr. Villanueva has taken no actions to suggest he would ever engage in this type of conduct again.

On the issue of sentencing disparity, counsel appreciates that the government has attempted to set out meaningful distinctions in cases and some coherent rationale for the recommendations it makes.  However, those distinctions are not as clear as the government has suggested, and there is no scientific formula that will lead to sentencing uniformity.  In a District with as many judges as this District has, there can be no definitive sentence that addresses the unique facts and circumstances of each case.  Sentences imposed in these cases vary from very short terms of probation to periods of incarceration, and everything in between. While Mr. Villanueva's conduct was serious, probation remains an appropriate resolution and would not result in disparity.  *See e.g., U.S. v. Jonathan Sanders*, 1-21-CR-384 (CJN) (36 months' probation); *United States v. Jackson Kostolsky*, 21-cr-197 (DLF) (36 months' probation with home confinement); *U.S. v. Jennifer Parks*, 1:21-CR-363 (CJN) (24 months' probation); *United States v. Brian Sizer*, 1-21-CR-621 (CRC) (12 months' probation); *United States v. Gary Edwards*, 1:21-CR-366 (JEB) (12 months' probation); *U.S. v. Jordan Hernandez*, 21-CR-272 (TJK), (24 months' probation); *United States v. Anna Morgan Lloyd*, 21-cr-164 (RCL) (36 months probation); *United States v. Jessica and Joshua Bustle*, 21-Cr-238 (TFH) (probation with home confinement); *United States v. Andrew Bennett*, Crim. No. 21-227 (JEB) (probation with home confinement imposed); *United States v. Danielle Doyle,* 21-cr-0234 (TNM) (2 months probation with fine imposed); *United States v. Valerie Ehrke*, 21-cr-97 (PLF) (36 months probation);  *United States v. Eliel Rosa*, 21-cr-068 (TNM) (12 months probation); *United States v. Jacob Hiles*, 21-cr-155 (ABJ) (2 years probation); *United States v. Sean Cordon*, 21-cr-269

(TNM) (2 months probation); *United States v. John Wilkerson, IV*, Crim. No. 21-302 (CRC)(3 years probation); *United States v. Andrew Wrigley*, Crim. No. 21-042 (ABJ) (18 months probation); *United States v. Andrew Hatley*, Crim. No. 21-098 (TFH) (3 years probation); *United States v. Rachael Pert*, Crim. No. 21-139 (TNM)(2 years probation); *United States v. Jeffrey Witcher*, Crim. No. 21-235 (RC)(12 months probation); *United States v. Brandon Nelson and Abram Markofski*, Crim. No. 21-344 (JDB) (2 years probation); *United States v. Thomas Vinson and Lori Vinson*, 21-CR-55 (RBW) (probation with community service and fine); *United States v. Eliel Rosa*, 21-68 (TNM) (12 months probation with community service); *United States v. Thomas Gallagher*, 21-Cr-41 (24 months probation); *United States v. Douglas Wangler*, 21-cr-365 (DLF) (24 months probation); *United States v. Bruce Harrison*, 21-cr-365 (DLF) (24 months probation). And the list could go on as the majority of individuals so charged have received probation. Indeed, a review of the chart the government compiles showing sentences to date in the January 6 cases, shows that well over half of the individuals charged with misdemeanors have received no term of incarceration.  [District of Columbia | Capitol Breach Cases | United States Department of Justice](#).

## CONCLUSION

In the end, this Court is faced with the task of meting out a just and appropriate sentence given all of the factors involved, and Mr. Villanueva places his trust in this Court to do just that. We urge the Court to sentence him to a brief period of probation. He plans to chaperone a group of teenagers attending a summer camp in Georgia in June and requests permission to do so.

                                          Respectfully submitted,

                                          A. J. KRAMER
                                          FEDERAL PUBLIC DEFENDER

                                          _____/s/_____
                                          MICHELLE PETERSON
                                          Chief Assistant Federal Public Defender
                                          625 Indiana Avenue, N.W.
                                          Suite 550
                                          Washington, D.C. 20004
                                          Shelli_Peterson@fd.org

.